**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MARGO SETTTLES,** *et al*. | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: 1:25-CV-01383-SAG** |
| **MAYOR & CITY COUNCIL OF** | * | |
| **BALTIMORE,** *et al.* | * | |
| **Defendants.** | | |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS THE COMPLAINT

Defendants, Mayor Brandon M. Scott and the Mayor and City Council of Baltimore (hereinafter "Mayor Scott," the "City", or collectively "Defendants"), by and through undersigned counsel, hereby move to partially dismiss Plaintiff's claims against them upon the grounds and authorities set forth below.

### INTRODUCTION

Plaintiffs Margo Settles and Liam Davis (hereinafter "Plaintiff Settles" and "Plaintiff Davis" or collectively, "Plaintiffs") bring this action against the Mayor & City Council of Baltimore and against Mayor Brandon M. Scott in his official and individual capacities, alleging that they were fired for supporting Mayor Scott's political opponents in the June 2024 election primary, and that in so doing the Defendants violated their right to exercise their freedom of speech. This right, as the Fourth Circuit has stated, is not limitless: "[T]he government, as an employer, is entitled to maintain discipline and ensure harmony as necessary to the operation and mission of its agencies, and therefore has an interest in regulating the speech of its employees." *Smith v. Gilchrist*, 749 F. 3d 302, 308 (4th Cir. 2014) (internal quotations and citations omitted)

(*accord Lane v. Anderson*, 660 F. App'x 185, 190-91 (4th Cir. 2016)).  Plaintiffs' claims fail for a variety of reasons, including that they have not alleged sufficient facts to establish *Monell* liability as to the City or personal liability as to Mayor Scott; and they have not sufficiently stated facts that show unlawful acts on the part of Defendants as required to sustain a claim for tortious interference with prospective business relations.  For the reasons that follow in this Memorandum, Defendants respectfully ask that Plaintiffs' complaint be dismissed.

## STATEMENT OF PERTINENT FACTS

The Baltimore City Charter creates the municipal corporation known as the Mayor and City Council of Baltimore, which among other things, "may sue or be sued."  City of Baltimore, Md., Charter, Article I § 1.[1]  The Mayor of Baltimore City holds the sole power of "appointment of all municipal officers, subject to confirmation by the City Council[.]"  *Id.* at Article IV, § 6(a). The Mayor, likewise, is empowered to remove "at pleasure" any of the municipal officers he appoints, excepting members of boards or commissions which he is empowered to remove except as otherwise provided by law.  *Id.* at § 6(c), (d).  A "municipal officer", as defined in the Charter:

> shall include, but shall not be limited to, the City Administrator, the heads of all departments and bureaus, the members of all commissions and boards, and persons who exercise authority comparable to that of heads of departments or bureaus.

*Id.* at Article I, § 2(f).  The Charter does not grant the Mayor hiring and firing power over non-appointed city employees; rather, the heads of respective departments hold "sole power of appointment and removal of all deputies, assistants, clerks and subordinate employees employed by them[.]"  *Id.* at § 7.

Defendant Brandon M. Scott was elected Mayor of Baltimore City in 2020, and reelected to a second term in 2024 after winning the Democratic primary on May 14, 2024.  Plaintiffs Margo

---

[1] For ease of reference, Defendants attach hereto Articles I and IV of the Baltimore City Charter. The Charter is available online at https://codes.baltimorecity.gov.

Settles and Liam Davis were, at all relevant times, at-will employees of the City of Balitmore's Department of Human Resources and Department of Transportation, respectively.  Both Plaintiffs ran campaigns for City Council seats in the same 2024 Democratic primary.  *Compl.* ¶ 2.  Both Plaintiffs' campaigns were unsuccessful.  *Compl.* ¶ 3.

Plaintiff Davis' employment with the City of Baltimore was terminated by Corren Johnson, Director of the Department of Transportation, on June 21, 2024.  *Compl.* ¶¶ 94-97.  Plaintiff Settles's employment with the City of Baltimore was terminated by Quinton Herbert, Director of the Department of Human Resources, on June 28, 2024.  *Compl.* ¶ 53.

## STANDARD OF REVIEW FOR GRANTING A MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Dismissal for failure to state a claim upon which relief can be granted is proper under Fed. R. Civ. P. 12(b)(6) when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Importantly, the Fourth Circuit has stated that [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards*, 178 F.3d at 243, quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When considering a motion to dismiss, the court must view well-pled allegations in the light most favorable to the plaintiff as true.  *Sheuer v. Rhodes*, 416 U.S. 232, 236 (1974); see also *Albright v. Oliver*, 510 U.S. 266, 268, (1994).  The court need not accept unsupported allegations or legal allegations.  *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor should a court need accept conclusory factual allegations that lack reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "Even under the liberal

standards of the Federal Rules of Civil Procedure, a plaintiff 'must at least set forth enough details so as to provide [a] defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4[th] 1998)(quoting *Self Directed Place Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990)).

## ARGUMENT

### I.   COUNTS I AND II MUST BE DISMISSED AGAINST THE MAYOR & CITY COUNCIL OF BALTIMORE BECAUSE PLAINTIFFS CANNOT SHOW A POLICY OR CUSTOM THAT LED TO THEIR TERMINATION.

Plaintiffs allege violations of their free speech and free association rights under the First Amendment to the U.S. Constitution and under Article 40 of the Maryland Declaration of Rights. Because Article 40 is Maryland's "constitutional counterpart" to the First Amendment, the two provisions are generally construed *in pari materia* and are analyzed together.  *See Sammons v. McCarthy*, 606 F. Supp. 3d 165, 199 (D. Md. 2022).  To prevail on a 42 U.S.C. § 1983 claim against a municipality – here, the City of Baltimore – Plaintiffs must first prove deprivation of a federal statutory or constitutional right.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  However, not every deprivation of a constitutional right will lead to liability on the part of the municipality; if Plaintiffs can prove they were deprived of their federal rights, they must then prove that the deprivation was done "through an official policy or custom."  *Carter v. Morris*, 164 F. 3d 215, 218 (4th Cir. 1999) (*accord Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).  A policy or custom can be established in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and

widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up).

In the instant case, assuming *arguendo* that Plaintiffs can prove that they were deprived of a federal statutory or constitutional right, the only way that Plaintiffs can establish a policy or custom would be through a showing that the decision to fire them was made by one with "final policymaking authority."  Plaintiffs' claim here fails, and the Fourth Circuit's decision in *Hunter v. Town of Mocksville, North Carolina* is instructive as to why.  *See* 897 F. 3d 538 (4th Cir. 2018).  In that case, the court delved deeply into the ordinances of the town in question to determine who held final policymaking authority over hiring and firing decisions.  The Town Board in *Hunter* had adopted a personnel ordinance that specifically stated "Town personnel shall be employed by the Town Manager, within the appropriations for that purpose; the terms of the positions shall be at the will of the Town Manager.  Fringe benefits shall be as specified from time to time by the Town Manager, subject to the approval of the Board."  *Id.* at 555-56.  With this language, the Fourth Circuit reasoned, the Town Board had explicitly delegated policymaking authority with respect to personnel to the Town Manager, and therefore personnel decisions by the Town Manager (including hiring and firing) constituted official policy sufficient to establish liability under 1983.  *Id.* at 557.

Not only is there an absence of a similar ordinance or other local law in this matter, but the City's charter explicitly provides the opposite: the Mayor does not have policymaking authority or final authority of any kind with respect to personnel city-wide.  *See* City of Baltimore, Md., Charter Article IV §§ 6-7.  The Mayor is empowered to make appointments of municipal officers, who serve at his pleasure.  But department heads are the ones who are empowered to appoint municipal *employees*, and who make ultimate hiring and firing decisions.  *See Id.* § 7.  Thus, even

if the allegations in the complaint are true – that Deputy City Administrator Simone Johnson said in a meeting that Mayor Scott wanted Plaintiffs to be fired – it does not follow that the Mayor Scott controlled the ultimate firing decisions, because he did not have the policymaking authority to do so. Counts I and II, therefore, must be dismissed against the Mayor & City Council.

## II. COUNTS I AND II AGAINST BRANDON M. SCOTT IN HIS OFFICIAL CAPACITY MUST BE DISMISSED AS DUPLICATIVE.

It is well established that a suit against a government official in their official capacity is "no different" from a suit against the government body itself. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). Therefore, "civil rights claims as to each person in [their] official capacity **shall** be dismissed because these claims essentially merge into the claims brought against the municipality." *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 780 (D. Md. 2001) (emphasis added); *see also St Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 2023 WL 2743361, at *28 (D. Md. March 31, 2023) (such claims should be dismissed as "duplicative" and "redundant") (collecting cases).

Plaintiffs have brought all four claims against all Defendants; therefore, their claims as against Mayor Scott in his official capacity are duplicative of their claims against the Mayor & City Council of Baltimore, and must be dismissed with prejudice.[2]

## III. COUNTS I AND II AGAINST BRANDON M. SCOTT IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED BECAUSE EVEN IF HE DID CONTROL PLAINTIFFS' FIRING, HE IS ENTITLED TO QUALIFIED IMMUNITY.

Not only did Mayor Scott not control the ultimate firing decision that led to Plaintiffs' loss of employment, *see* Section I *supra*, but Mayor Scott would also be entitled to qualified immunity

---

[2] The fact that Defendants ask this court *supra* to dismiss these claims against the City as well does not mean that the official capacity counts against Brandon M. Scott can survive; the counts are "no different" and so the reasons for one to be dismissed would apply to the other.

even if he had controlled the decisions. A government official sued in their individual capacity may be entitled to a defense of qualified immunity. This defense is not available when "(1) the allegations underlying the claim, if true, substantiate [a] violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Lane v. Anderson*, 660 F. App'x 185, 190 (4th Cir. 2016) (quoting *Smith v. Gilchrist*, 749 F. 3d 302, 308 (4th Cir. 2014)). A right is clearly established when "existing precedent" puts the "constitutional question beyond debate." *Id.* But when an official acts in a legal "gray area", they are entitled to qualified immunity. *Id; see also St Michael's Media*, 2023 WL 2743361 at *30-33.

Plaintiffs allege in Counts I and II that they were fired for supporting Mayor Scott's political opponents in Baltimore's primary election in 2024.[3] A claim of employment termination for exercise of free speech rights may be analyzed under one of two different theories, depending on the circumstances. In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court established an analytical test for a teacher who alleged violations of his First Amendment rights after he wrote a letter criticizing the Board of Education and was subsequently fired. Separately, in a duo of cases – *Branti v. Finkel*, 445 U.S. 507 (1980) and *Elrod v. Burns*, 427 U.S. 347 (1976) – the Supreme Court also established an analytical test for when a public employee is fired for "political beliefs and affiliation", creating an "exception" that allows for dismissal of political patronage employees; specifically, those of a different political party who occupy "policymaking positions" and are fired by an incumbent official of a different political party. *See Bland v. Roberts*, 730 F. 3d 368, 374 (4th Cir. 2013).

---

[3] Counts III and IV are not addressed in this section because they must be dismissed for other reasons; *see infra* Sections IV and V.

There is a question as to which of these two tests applies to the facts at issue in this case. Although the Fourth Circuit has held that "[t]hese cases make clear that the First Amendment generally bars the firing of public employees solely for the reason that they were not affiliated with a particular political party **or candidate**," *see id.* (emphasis added), the Supreme Court of Maryland (formerly the Court of Appeals of Maryland) has held that "campaign activity" is not the same thing as political party affiliation sufficient to trigger the application of the *Elrod-Branti* test over the *Pickering* test. *See Newell v. Runnels*, 407 Md. 578, 614-15 (2009).

In *St Michael's Media, Inc. v. Mayor & City Council of Baltimore*, this court considered whether qualified immunity applied to the City Solicitor who was alleged to have "unilaterally" instructed a municipally-owned venue to cancel a political rally planned by plaintiffs (although, as the court noted, the City Charter did not bestow the authority to the City Solicitor to do such a thing). 2023 WL 2743361, at *29. Assuming *arguendo* that a § 1983 claim had been successfully stated, the court nevertheless dismissed the claims against City Solicitor in his individual capacity because although viewpoint discrimination was unlawful, it was not clearly established whether the forum at issue was public or non-public, or whether a "heckler's veto" exception applied. *Id.* at 33 ("The contours of the First Amendment are far from crystal clear, such that [Solicitor Jim] Shea had fair warning that he would have known his conduct was unconstitutional." (internal quotation marks omitted)).

Here, the right at issue – right to not be fired for expressing or appearing to express support for the mayor's political opponents – was **not** "clearly established in the specific context of the case", *St. Michael's* at *31 (quoting *Merchant v. Bauer*, 677 F. 3d 656, 662 (4th Cir. 2012), because it is not clear whether the jurisprudence of political party affiliation terminations – the *Elrod-Branti* test – applies here. The Mayor, a politician about to begin his second term in office, reasonably

would have felt that he had the right to see that leadership positions in the City were filled by individuals who he could trust to carry out his policies and priorities.  The law is also not well developed as to whether *Elrod-Branti* can apply when all parties are of the *same* political affiliation.  *See Newell*, 407 Md. at 621-22 ("[A] rule limiting patronage dismissals to antagonists of different party registration could undermine the will of the electorate to the same degree as a rule prohibiting patronage dismissals outright.  Be that as it may, a distinction remains between employment decisions based on political patronage and those based on an employee's exercise of free speech . . . Stated plainly, the mere fact that an employee engaged in campaign activity does not invite application of the *Elrod/Branti* test . . .").

The court found in *St. Michael's* that the City Solicitor's (alleged) decision to revoke an organization's planned rally did not clearly qualify as viewpoint discrimination sufficient to subject him to liability in individual capacity because there are possible avenues under the law in this circuit for nonpublic forum exceptions, heckler's veto exceptions, or for "the ability to impose reasonable, adequately justified limitations" that "leaves room for uncertainty."  The issue before this court is similar: it is unclear whether Mayor Scott's (alleged) decision to fire plaintiffs should be controlled by the *Elrod-Branti* test, which allows for an exception for dismissal for "political disloyalty", *see Bland v. Roberts*, 730 F. 3d 368, 394 (4th Cir. 2013), or the *Pickering* test, which does not.  Either way, there is "room for uncertainty" here too.  It would not have been "sufficiently clear" that Mayor Scott's (alleged) decision to fire plaintiffs would contravene their First Amendment rights.  *St. Michael's*, 2023 WL 2743361 at *33 (quoting *Anderson v Creighton*, 483 U.S. 635, 640 (1987); *cf Pathways Psychosocial* (defendants could not enjoy qualified immunity because 1) there was a recorded meeting in which the mayor stated to city council that there was "no legal avenue by which they can oppose" the plaintiff mental healthcare facility's move

9

downtown and "they need to be careful"; and 2) "the law has been clearly established since 1985 that public officials cannot administer a zoning system based on irrational prejudice about the mentally disabled" – here, there is no such statement from Mayor Scott, nor was the law as to the mayor's right to fire an employee who supports his political opponents – and implicitly, opposes his own agenda and priorities – clearly established). Mayor Scott is thus entitled to qualified immunity with respect to plaintiffs' claims against him in his individual capacity.

## IV.    COUNT III MUST BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE IT ALLEGES NO PUBLIC POLICY NOT OTHERWISE REMEDIED.

The tort of wrongful termination (sometimes styled as abusive discharge) was established in Maryland law to "provide a remedy for otherwise unremedied violations of public policy", as a judicially-created exception to the doctrine of employment at-will. *Newell v. Runnels*, 407 Md. 578, 646 (2009) (quoting *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 422 (2003)). Ordinarily, an at-will employee may have their employment terminated at any time for any reason, **except** when the termination is for a reason that "contravenes some clear mandate of public policy." *Id.* (quoting *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981)).

In *Newell*, the Supreme Court of Maryland explained that, as they held in *Molesworth v. Brandon*, 341 Md. 621 (1996), a claim under this tort could survive only if there was no other possibility for redress available under relevant statutes. *See Newell*, 407 Md. 578 at 647-48. In *Molesworth,* the plaintiff's abusive discharge claim survived because the other recourse that would have been available to her through statute, the Maryland Fair Employment Practices Act, only applied to employers with more than 15 employees. *Id.* Because the *Molesworth* plaintiff's employer employed less than 15 people, the MFEPA would not apply, and she would have had no other recourse to pursue her claim of sex discrimination; therefore, the court allowed her abusive discharge claim to survive. The court also noted that it had previously "distinguished other cases

in which we declined to recognize common law abusive discharge claims where the plaintiffs had other remedies available to them." *Id.* (citing *Makovi v. Sherwin-Williams, Co.*, 316 Md. 603 (1989) and *Chappell v. S. Md. Hosp.*, 320 Md. 483 (1990)).  After that analysis, the court held that the plaintiffs had to make a showing that they, as employees of a State official, had "an alternative administrative remedy to seek redress" for their terminations allegedly for engaging in political activity.

Public policy mandates may also be found in provisions of state or federal statutes other than antidiscrimination laws.  In *Insignia Residential Corp. v. Ashton*, 359 Md. 560, 562-63 (2000), an employee who was fired for refusing to engage in sexual intercourse with a superior stated a cognizable claim for wrongful discharge, even though remedies were available to her for sexual harassment under Title VII and the Maryland FEPA, because she cited to Md. Code Art 27 § 15 which prohibits a person from engaging in prostitution but provided no civil remedy to her for losing her job after refusing to engage in such conduct.  The court found that this formed the basis for a public policy mandate independent from Federal and State statutory remedies.  *See also Hinshaw v. Heavyweight Title Co.*, No. CIV.JFM 06 2340, 2006 WL 3537574, at *1 (D. Md. Nov. 14, 2006), *aff'd sub nom. Hinshaw v. Heavyweight Title Co., Inc.*, 234 F. App'x 125 (4th Cir. 2007)

By contrast, here, Plaintiffs state that their Count III, Wrongful Termination in Violation of Public Policy, is based upon "public policy favoring freedom of speech and freedom of association, as expressed in the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights."  Compl. at ¶ 126.  In other words, their wrongful termination claim is duplicative of their First Amendment § 1983 claim and their Md. Article 40 claim, as the "public policy" sources they cite are merely the First Amendment and Article 40

11

themselves. This claim, therefore, is not cognizable and should be dismissed as to all Defendants with prejudice.

## V.    COUNT V MUST BE DISMISSED AS PLAINTIFFS CANNOT PROVE ANY MALICE ON THE PART OF DEFENDANTS.

To prove a claim of tortious interference with prospective business relations, a plaintiff must show "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *See Volcjak v. Washington County Hosp. Ass'n*, 124 Md. App. 481, 512 (1999) (quoting *Willner v. Silverman*, 109 Md. 341, 355 (1909). Maryland courts have held that "intent to harm a plaintiff's business relationship alone is not sufficient" to establish the elements of this tort; rather, the defendant must have interfered through "improper means." *Id.* The types of wrongful acts that have established liability for this tort have been "limited to violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (quoting *K & K Management, Inc. v. Lee*, 316 Md. 137, 166 (1989). For the conduct at issue to be wrongful, "it must be conduct that is independently wrongful and unlawful, quite apart from its effect on the plaintiff's business relationships." *Gorby v. Weiner*, 2014 WL 4825962, at *10 (D. Md. Sept. 23, 2014) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Associates*, 650 A. 2d 260, 271 (Md. 1994) (internal quotation marks omitted).

In *Volcjak*, the "willful" act alleged was that the defendant breached its contract with the plaintiff for the purpose of causing him damage – but the court held that this allegation did not sufficient state a cause of action because the breach of contract, while unlawful, lacked the requisite "aggravating wrongful acts". *Id.* (citing same). In *Yuan v. Johns Hopkins University*,

227 Md. App. 554 (2016), the Appellate Court of Maryland held that the plaintiff had failed to plead "malice" with particularity when he alleged that his former employer "interfered with his hiring" at another corporation:

> Yuan has not alleged that JHU communicated false information to ComputerCraft or acted with actual malice when called to provide a reference; all that he pled was that he believed Wendland was contacted and provided a "negative reference"; from this Yuan concluded that JHU provided "false references about him" and "took these actions without right or justifiable cause." Yet Yuan did not disclose who at JHU made the possibly defamatory, malicious, or false statements to ComputerCraft, or what the contents of such statements was. Given the statutory presumption that JHU's reference was done in good faith, we find no error in the court's determination that JHU is not liable for this tort.

227 Md. App. at 583.

Here, similarly, Plaintiffs fail to sufficiently allege any facts that show "unlawful purpose" on the part of Defendants.  Even if it is true that Plaintiff Davis' contact at RK&K, Henry Kay, told Plaintiff Davis that "the Mayor's Office 'said no go'" as to his prospective employment with RK&K, *see* Compl. ¶ 105, this without more does not establish that there was any unlawful purpose on the part of the City or Mayor Scott.  As the court stated in *Yuan*, Md. Code Courts & Judicial Proceedings Article § 5-423 creates a presumption of good faith in employers who are called upon to give information regarding a former employee.  *Id.* at 582-83.  The Complaint falls short of establishing any particular facts that would show an unlawful act on the part of Defendants when they responded to RK&K's inquiry, as opposed to, for example, Defendants' genuine assertion of a conflict of interest for RK&K's existing contracts with the City, *see* Compl. 104; or genuine potential concerns about Plaintiff Davis' loyalty after he promised the Mayor's Office that he would express "continued support" throughout his campaign for the Mayor's policies and efforts but later was heard telling a third party he was "neutral" regarding the mayoral election, *see* Compl. ¶¶ 87, 100.  *Cf Press v. United States*, 2018 WL 2237492, at *9 (D. Md. May 16, 2018) (tort sustained because defendants intentionally published a "largely, if not entirely false report" that

13

accused plaintiff of having misused secure government computers, which resulted in harm to the plaintiff's business relationships with federal contractors). These facts, as alleged, thus do not satisfy the elements of the tort, and this Count must be dismissed as well.

## CONCLUSION

For the reasons stated herein, the City Defendants respectfully ask that the Court grant the relief requested, with prejudice.

Respectfully submitted,

Ebony M. Thompson, Esq.
**CITY SOLICITOR**

_____/s/_____
Elisabeth B. Hofmann, Esq.
Federal Bar No.: 22099
Deputy Division Chief
Labor, Employment & Personnel Division
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
(410) 545-7391
elisabeth.hofmann@baltimorecity.gov

*Attorney for Defendants, Brandon M. Scott and Mayor & City Council of Baltimore*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that on this 16th day of June, 2025, the foregoing Motion was filed in accordance with the Electronic Filing Requirements and Procedures as established by the U.S. District Court for the District of Maryland.

_____/s/_____
Elisabeth B. Hofmann

14